OSCN Found Document:MURATORE v. STATE ex rel. DEPT. OF PUBLIC SAFETY

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 MURATORE v. STATE ex rel. DEPT. OF PUBLIC SAFETY
2014 OK 3
Case Number: 111586
Decided: 01/28/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 3, __ P.3d __



MARK M. MURATORE, Plaintiff-Appellee,
v.
STATE OF OKLAHOMA, ex rel., DEPARTMENT OF PUBLIC SAFETY, Defendant-Appellant.





ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I, ON
APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, STATE
OF OKLAHOMA, HONORABLE JAMES B. CROY





¶0 Mark Muratore, after being arrested for driving under the influence, submitted to a breathalyzer test. The breathalyzer test was administered using the Intoxilyzer 8000, and the test result reflected an alcohol concentration of .11. The Department of Public Safety revoked Mr. Muratore's driver's license for one year, and he appealed the revocation to the District Court of Oklahoma County on issues of the admissibility of the breathalyzer test. The trial court vacated the revocation of Mr. Muratore's driver's license, finding that the Board of Tests had no rules in place governing maintenance procedures for the Intoxilyzer 8000 and that the manufacturer's certificate of calibration for this particular Intoxliyzer 8000 and the supplier's certificate of analysis for the gas canister used as a reference method for the Intoxilyzer 8000 were inadmissible hearsay. The Court of Civil Appeals reversed. We granted certiorari and find that the trial court did not abuse its discretion in refusing to admit the manufacturer's certificate of calibration and the supplier's certificate of analysis. We also find that the Department of Public Safety did not meet its threshold burden of proving all the facts necessary to sustain the revocation of Mr. Muratore's license, and the record supports the trial court's decision to vacate the revocation of Mr. Muratore's driver's license.





COCA OPINION VACATED; TRIAL COURT'S ORDER VACATING THE
REVOCATION OF PLAINTIFF-APPELLEE'S DRIVER'S LICENSE
AFFIRMED





Stephen G. Fabian, Jr., Oklahoma City, Oklahoma, Attorney for Plaintiff-Appellee
Joanne Horn, Assistant General Counsel, Department of Public Safety, Oklahoma City, Oklahoma, Attorney for Defendant-Appellant







GURICH, J.



Facts and Procedural History


 


¶1 On April 21, 2012, at approximately 11:30 p.m., Plaintiff-Appellee Mark Muratore was arrested by Officer Tim Harwell of the Edmond Police Department for operation of a motor vehicle while under the influence of an intoxicating substance. The arresting officer read him the Oklahoma Implied Consent advisory and transported Muratore to the booking area of the Edmond city jail where he voluntarily submitted to a breathalyzer test. The breathalyzer test was administered using the Intoxilyzer 8000, a device approved by the Board of Tests for Alcohol and Drug Influence. At 11:51 p.m. the officer began the fifteen-minute deprivation period.[1] Once the fifteen-minute deprivation period was over, the officer took the first breath sample at 12:08 a.m. on April 22, 2012, with a test result of .11g/210L.[2] The second sample was taken at 12:11 a.m. with a test result of .11g/210L.[3] Using the Officers' Affidavit and Notice of Revocation/Disqualification form provided by the Department of Public Safety, the officer prepared and served the Affidavit revoking Mr. Muratore's driver's license. On April 23, 2012, Mr. Muratore requested an administrative hearing with DPS concerning the revocation of his driver's license. An administrative hearing was held on November 7, 2012, and the hearing officer sustained the revocation. Mr. Muratore appealed to the District Court of Oklahoma County.


¶2 At trial, the parties stipulated to the following facts: 1) the officer had reasonable grounds to stop Mr. Muratore; 2) Mr. Muratore was operating a motor vehicle on the roadways of Oklahoma; 3) the officer arrested Mr. Muratore; 4) the officer read the implied consent advisory to Mr. Muratore; and 5) Mr. Muratore agreed to take the breathalyzer test. The only witness, Officer Harwell, testified that although he was trained by the Board of Tests to operate the Intoxilyzer 8000 and his permit for administering the test was current at the time of the arrest, the affidavit he signed contained several errors, including the date of arrest,[4] the date the affidavit was served, and the date the officer signed the affidavit.[5]


¶3 The trial court admitted a number of exhibits at trial,[6] including the arresting officer's affidavit, but refused to admit the manufacturer's Certificate of Calibration for the Intoxilyzer 8000, serial number 80-003810, dated March 26, 2009, and the ILMO Specialty Gases Certificate of Analysis for the gas canister, lot number 03112080AI, dated February 10, 2012. The trial court found both documents were hearsay and did not fall under the public records exception to the hearsay doctrine found in 12 O.S. 2011 § 2803(8) because they were not created by the Board of Tests. After hearing argument from both sides, the trial court also found the Board of Tests had no rules in place governing maintenance procedures for the Intoxilyzer 8000. The trial court reversed the revocation of Mr. Muratore's driver's license.


¶4 DPS appealed, and COCA reversed, disagreeing with the trial court's interpretation of the facts:




We here note that, in support of his argument to affirm, Muratore argues the breathalyzer was obviously malfunctioning, and the trial court so properly determined, given the discrepancy between the date of arrest entered by the officer ("4/22/2012) and the "date of test" entered automatically by the breath testing device ("04/21/2012"). However, from our examination of the Officer's Affidavit and Notice of Revocation, and considering the admitted date of the arrest on April 21, and the beginning of the deprivation period just before midnight on April 21, it seems more likely the device recorded the correct time (11:53 p.m.) when the deprivation period began on April 21, 2012, as the correct starting "date of test" ("04/21/2012"), and some fourteen minutes later, at "00:07" (12:07 a.m.) on April 22, 2012, recorded the result of the first of three "air blank" reference tests before recording the analysis of Muratore's first breath sample at "00:08" (12:08 a.m.) on April 22, 2012.




Mark Muratore v. State, ex rel. Dep't of Pub. Safety, Case No. 111,586, at 16 n.1 (May 10, 2013) (published) (emphasis added). Mr. Muratore petitioned this Court for certiorari review, and we granted certiorari on November 25, 2013.


Standard of Review


¶5 The District Court's review of a driver's license revocation is conducted de novo, "with the 'trial de novo' being a trial of the entire case anew, both on the law and on the facts." Appeal of Dungan, 1984 OK 21, ¶ 7, 681 P.2d 750, 752; see also 47 O.S. 2011 § 6-211(I). To revoke a driver's license based upon a breath test result and a sworn report from a law enforcement officer, DPS bears the burden in the district court of proving by a preponderance of the evidence "all facts necessary to sustain the revocation, including the operation/actual physical control of a motor vehicle while intoxicated, a valid arrest, proper advice of rights and consequences, as well as consent to and performance of a valid test on a properly maintained testing device." Derrick v. State ex rel. Dep't of Pub. Safety, 2007 OK CIV APP 56, ¶ 11, 164 P.3d 250, 253 (citing 47 O.S. § 754(F)(1); 47 O.S. § 6-211; Smith v. State, ex rel. Dep't of Pub. Safety, 1984 OK 16, ¶ 6-8, 680 P.2d 365, 368; Westerman v. State, 1974 OK CR 151, ¶ 11, 525 P.2d 1359, 1361).


¶6 "Revocation appeal proceedings in the district court are exempt from the provisions of the Oklahoma Pleading and Discovery codes, but they are not exempt from the Oklahoma Evidence Code." Hedrick v. The Comm'r of the Dep't of Pub. Safety, 2013 OK 98, ____P.3d____. The trial court's determination to admit or not admit evidence under one of the hearsay exceptions will not be disturbed absent an abuse of discretion. Kerr v. Clary, 2001 OK 90, ¶ 15, 37 P.3d 841, 844. In reviewing the revocation of a driver's license on appeal, this Court will not reverse the trial court's judgment "if there is any evidence, or any reasonable inference to be drawn therefrom, which tends to support [the trial court's] findings." Smith, 1984 OK 16, ¶ 7, 680 P.2d 365, 368. see also Hollis v. State ex rel. Dep't of Pub. Safety, 2008 OK 31, n.4, 183 P.3d 996, 999 n.4 ("Unless the lower court's rulings are found to be erroneous as a matter of law, or unsupported by evidentiary foundation, the appellate courts will not disturb the findings made.") (emphasis added).


Analysis


The Trial Court Did Not Abuse Its Discretion in Refusing to Admit the Manufacturer's Certificate of Calibration and the Supplier's Certificate of Analysis


¶7 At trial, DPS attempted to offer into evidence a Certificate of Calibration for the Intoxilyzer 8000, serial number 80-003810, from the manufacturer of the device, CMI, Inc. The certificate claims to certify that the calibration of the device was tested on March 26, 2009, and found to be in compliance with the National Safety Administration Standard for Devices to Measure Breath Alcohol. DPS also attempted to offer into evidence a Certificate of Analysis from ILMO Specialty Gases, a supplier of the gas canisters used as a reference method for the Intoxilyzer 8000. The certificate claims to certify that on February 10, 2012, the gas canister, lot number 03112080AI, contained a ratio of ethanol and nitrogen appropriate for use with breath alcohol testing instruments. Counsel for Mr. Muratore timely objected to the admission of both certificates as hearsay.[7]


¶8 It is undisputed that both certificates are hearsay because they were offered to prove the truth of the matter asserted--that both devices were in proper working order.[8] But DPS argued both certificates were admissible under 12 O.S. 2011 § 2803(8), the public records hearsay exception, which excludes from the hearsay rule:




[A] record of a public office or agency setting forth its regularly conducted and regularly recorded activities or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual finding resulting from an investigation made pursuant to authority granted by law.




¶9 The Certificate of Calibration for the Intoxilyzer 8000 was prepared by CMI, Inc., the manufacturer of the Intoxilyzer 8000 and signed by one of its technicians. The Certificate of Analysis for the gas canister was prepared by ILMO Specialty Gases, a supplier of gas canisters, and signed by a specialty gas lab technician. As the trial court correctly noted, neither of the certificates offered by DPS was prepared by a member of the Board of Tests or any other public officer of this state, so neither is a public record for purposes of the public records exception to the hearsay doctrine. DPS argued the certificates were public records because they were regularly kept records of the Board of Tests, but this argument misses the point. The "[j]ustification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record."[9] Because these certificates were created by third parties--CMI, Inc., and ILMO Specialty Gases--and not a public official, the trial court correctly concluded that the public records exception to the hearsay doctrine did not apply.


¶10 The certificates are also not admissible in this case under the business records exception to the hearsay doctrine.[10] Section 2803(6) excludes from the hearsay rule:




A record of acts, events, conditions, opinions or diagnosis, made at or near the time by or from information transmitted by a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the record, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with paragraph 11 or 12 of Section 2902 of this title, or with a statute providing for certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation and calling of every kind, whether or not conducted for profit.




12 O.S. 2011 § 2803(6).


¶11 Section 2803(6) requires a proper foundation for the admission of documents pursuant to this exception. A "custodian or other qualified witness" must testify that the record was made "at or near the time by or from information transmitted by a person with knowledge," the record was "kept in the course of a regularly conducted business activity," it was "the regular practice of that business activity to make the record," and no "source of information or the method or circumstances of preparation indicate lack of trustworthiness." 12 O.S. 2011 § 2803(6).


¶12 Although these certificates may have been "kept in the course of a regularly conducted business activity," no custodian or other qualified witness testified as to whether the certificates were made at or near the time of the events memorialized in the certificates or whether it was the regular practice of either CMI, Inc. or ILMO Specialty Gases to make certificates of these types. The "[r]eliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation."[11] DPS presented no evidence indicating the reliability of these certificates as required by § 2803(6).[12]


¶13 Using a novel theory, COCA concluded that the certificates "kept by the Board of Tests as part of its regularly kept records, constitute non-testimonial evidence. As such, the certificates are admissible and admission of those certificates does not violate the confrontation clause of the Sixth Amendment."[13] Neither party raised the Confrontation Clause at the hearing with the trial court, nor did they brief the issue.


¶14 The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[14] The Oklahoma Court of Criminal Appeals has stated that "under the Confrontation Clause, testimonial hearsay statements may be admitted against the accused in a criminal trial only when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant." Taylor, 2011 OK CR 8, ¶ 32, 248 P.3d at 373 (citing Crawford, 541 U.S. at 68) (emphasis added). In determining whether a defendant's Sixth Amendment right to confrontation has been violated, the critical question is whether the statement is "testimonial" under the Crawford Doctrine.[15]


¶15 The Confrontation Clause only applies in criminal cases. The case before us is an administrative appeal of a revocation of a driver's license, and the Confrontation Clause cases relied on by COCA are not dispositive of whether the documents DPS sought to introduce are admissible under the hearsay doctrine. Although the Confrontation Clause and the hearsay doctrine sometimes coincide, the doctrines operate independently of one another.[16] As the case before us demonstrates, a statement considered "nontestimonial" and admissible for purposes of the Confrontation Clause is not necessarily admissible under the hearsay doctrine, as COCA incorrectly concluded. See, e.g., State v. Pugh, 225 P.3d 892, 831-32 (Wash. 2009) ("Nontestimonial hearsay, on the other hand, is admissible under the Sixth Amendment subject only to the rules of evidence.").[17] Although some courts have determined these types of certificates are nontestimonial evidence and admissible in criminal cases under the Confrontation Clause, the certificates are not admissible in this case under the public records exception to the hearsay doctrine because they were not prepared by a public official and are not admissible under the business records exception to the hearsay doctrine because DPS failed to lay a proper foundation for the admission of the certificates as required under that exception.


¶16 Regardless of the hearsay exceptions, the certificates were properly refused because they weren't relevant to whether the device was working at the time of Mr. Muratore's arrest. see 12 O.S. §§ 2401-2402. Calibration of this particular Intoxilyzer 8000 was tested and found to be in compliance with the National Safety Administration Standard for Devices to Measure Breath Alcohol on March 26, 2009. But that doesn't prove the device continued to work properly at the time of Mr. Muratore's arrest more than three years later. Similarly, an analysis of the gas canister when it left the supplier in March of 2012, is not conclusive proof that the canister contained the correct ratio of ethanol and nitrogen at the time of Mr. Muratore's arrest a month later. The trial court did not abuse its discretion in refusing to admit both certificates.


Evidence in the Record Supports the Trial Court's Decision to Vacate the Revocation of Mr. Muratore's Driver's License


¶17 On cross-examination, counsel for Mr. Muratore questioned Officer Harwell about inaccuracies contained in the affidavit that revoked Mr. Muratore's driver's license. The officer testified he manually put in the information at the top of the affidavit, including the arrest date of April 22, 2012,[18] but that the arrest date on the affidavit was incorrect because Mr. Muratore was actually arrested on April 21, 2012.[19] The officer also testified that the Intoxilyzer 8000 automatically input the signature date, which was April 21, 2012.[20] He testified he did not sign the affidavit on the 21st as the affidavit indicated and that date was error.[21] The officer testified the date the affidavit was served showed April 21, 2012, but that he did not serve Mr. Muratore on the 21st as the affidavit indicated and that date was also error.[22] The exchange on cross-examination concluded as follows:




Q: So we can feel comfortable that this affidavit is accurate?
A: Yes, sir.
Q: Well, we know it's inaccurate, don't we?
A: The dates, yes sir.
Q: We can feel comfortable in that respect, can't we?
A: Yes, sir.[23]




The trial court found these inaccuracies troubling:




How does the machine put a date earlier for the completion of the test rather than the day that he says the test should have been completed? See, it says here the date of arrest he put in, this is the testimony I heard, 4/22. And it was really 4/21, just before midnight. . . . But the machine - well, actually the machine has it right there . . . says we started the deprivation period at twenty-three fifty-one on 4/21. And it was finished apparently at zero zero one three of 4/21, which was the day before because that's when it generated that he served notice and he signed it. I have no explanation for that. He had no explanation. He said, "Well now, part of this was my error but the other part wasn't," the other part was auto-populated by the machine. That's something that can't be explained.[24]




¶18 The trial court was also concerned that although an administrative rule requires the Board of Tests to implement maintenance procedures for the Intoxilyzer 8000, at the time of Mr. Muratore's trial, the Board of Tests hadn't actually implemented any rules governing the maintenance of these particular machines. Section 30-1-3(j) of Title 40 of the Administrative Code provides:




(j) Maintenance. Maintenance shall be performed on the CMI 8000 Intoxilyzer, equipped with nitrogen-ethanol dry gas mixture, at such time as the regulator of the nitrogen-ethanol pressurized dry gas canister fails to provide a gas sample for analysis or by the manufacturers stated expiration date, whichever occurs first. Such maintenance shall be performed by Board personnel, according to the procedure(s) prescribed by the State Director of Tests for Alcohol and Drug Influence.




Okla. Admin. Code § 40:30-1-3 (emphasis added).


¶19 The following exchange took place between counsel for DPS and the trial court:




[The Court]: But let's cut right to the chase, are there rules and regulations or actions by the Department governing the maintenance of these machines -- the "Department" meaning the Board of Tests - either acting through its director or acting as the Board itself? Does the Department have any knowledge of rules, regulations, and procedures adopted by the Board or promulgated by the Board or adopted by the then Department head?


Ms. Horn: I know that the bench check procedure has been adopted over there, they have been using it for five years. Now, whether Blackburne approved it or whether -


. . . .


The Court: But the question is just much more yes or no than that. Are there rules, procedures adopted by the Board, either sitting as a board or through its director, that govern the maintenance and the bench check procedures of the machine, the 8000?


Ms. Horn: Well, I have provided the Court what I've got -


The Court: [Y]ou have previously told me in other cases "No, there are not." You actually called the Board and they said, "No, he didn't really do that," "he" being the director at the time. I'll tell you we have been offered none.[25]




¶20 Without any rules governing the maintenance of the Intoxilyzer 8000, there is no way to verify the bench check procedure referred to by counsel for DPS is sufficient to ensure the proper maintenance of these machines or that the person who performed the bench check was in fact qualified to perform maintenance on an Intoxilyzer 8000. Additionally, according to Exhibit 6, an affirmation of a resolution by the Board of Tests dated June 12, 2008, the pressurized gas cylinder used as a reference method for the Intoxilyzer 8000 must contain "a known breath-alcohol equivalent ratio of nitrogen and ethanol gas."[26] But without any rules governing the maintenance of the Intoxilyzer 8000, there is no way to verify, through the bench check procedure or otherwise, whether the attached pressurized gas cylinder contained the correct ratio of nitrogen to ethanol.[27]


¶21 "[O]ne of the main purposes of the Board of Chemical Tests for Alcoholic Influence is to promulgate rules and regulations on operation and maintenance of breathalyzer equipment in order to assure the accuracy of the tests run on this equipment. . . . [F]ailure to comply with all the rules invalidates tests given on the equipment." Westerman, 1974 OK CR 151, ¶ 10, 525 P.2d at 1361 (emphasis added). In driver's license revocation proceedings before the District Court, DPS bears the burden of proving, among other things, that a valid breathalyzer test was performed on a properly maintained testing device. DPS can't carry this burden when the Board of Tests has not implemented any rules governing the maintenance of the Intoxilyzer 8000.


Conclusion


¶22 The standard of review in cases of this nature requires the appellate courts to give deference to the trial court's findings and affirm if there is any evidence or any reasonable inference to be drawn from that evidence, which tends to support the trial court's findings. The inaccuracies in the officer's affidavit coupled with the lack of prescribed maintenance procedures for the Intoxilyzer 8000 is more than enough evidence to affirm the trial court's findings in this case, and we find that COCA improperly substituted its judgment for that of the trial court's in this case. DPS did not meet its threshold burden of proving all the facts necessary to sustain the revocation of Mr. Muratore's license, and the trial court's decision to vacate the revocation of Mr. Muratore's Driver's License is affirmed. Today's decision shall apply prospectively, controlling only those administrative proceedings currently pending before DPS and only those administrative appeals currently pending in the district courts or filed in the district courts after the issuance of this opinion. Today's opinion shall have no effect on revocation proceedings that have become final judgments.[28]




¶23 COLBERT, C.J., REIF, V.C.J., KAUGER, EDMONDSON, COMBS and GURICH, JJ. - concur.


¶24 WATT, WINCHESTER and TAYLOR, JJ. - dissent.





FOOTNOTES




[1] Oklahoma Administrative Code § 40:30-1-3(h) provides:


(h) Analysis. Each such analysis shall include the following steps:


(1) Observation of the subject whose breath is to be tested sufficient to determine that, for a period of at least fifteen (15) minutes prior to the collection of the first breath specimen, and continuing through the second breath specimen, the subject shall not have ingested alcohol in any form or any other substance, vomited, or smoked. Such observation shall be carried out by the breath-alcohol analysis Operator or Specialist or by any other qualified person.


(2) Analysis for alcohol of two (2) or more specimens of breath consisting substantially of expired alveolar air.


(3) A blank analysis preceding analysis of each breath specimen.


(4) Analysis for alcohol of at least one suitable reference or control sample of a known alcohol concentration, such as air equilibrated at a known temperature with a reference solution of known ethyl alcohol content in an alcoholic breath simulator device approved by the Board or a Board approved nitrogen-ethanol dry gas reference method. The results of each such control analysis must coincide with the corresponding vapor-alcohol concentration target value within plus or minus one-hundredths gram per two hundred and ten liters (± 0.01g/210L).


(5) The operator performing each such analysis shall properly complete a Breath-Alcohol Analysis Record and Report form prescribed and designated by the State Director of Tests for Alcohol and Drug Influence, and shall promptly forward one (1) copy thereof to the Oklahoma Department of Public Safety, and to other agencies and persons listed on the form.


Okla. Admin. Code § 40:30-1-3(h).





[2] Transcript of Proceedings, Def. Ex. 3.





[3] Id.





[4] On direct examination the officer testified:


Q: And what was the arrest date; what was the arrest date?
A: The arrest date would have been the 21st.
Q: So that's an error on the affidavit?
A: Yes, ma'am.


Transcript of Proceedings at 24.





[5] The exchange on cross-examination was as follows:


Q: You said you served him on the 21st on this affidavit, that you swore was the truth, the whole truth, and nothing but the truth, you said here that you served him on the 21st?
A: Yes, sir.
Q: Now you're telling us that was an error?
A: It was an error.
Q: Okay. In the next section, section four, you swore under oath and it says on the 21st that this information is true and correct?
A: Yes, sir, I did sign that.
Q: I take it you did it on that date; correct?
A: On which date?
Q: Well, the 21st. That's what you have on your affidavit.
A: That I served him?
Q: That's what you said?
A: Yes, sir. On the Officer's Affidavit, it does state that. That is an error.
Q: Well, did you make an error in two places?
A: Yes, sir.


Transcript of Proceedings at 24-25.





[6] At trial, the following exhibits were admitted into evidence: 1) the DPS Order issued November 9, 2012, sustaining the revocation of Mr. Muratore's driver's license; 2) Mr. Muratore's driving index; 3) the Officer's Affidavit and Notice of Revocation; 4) a copy of the Board of Tests Administrative Rules, 40:30-1-3; 5) a copy of the affirmation of a resolution as made at a meeting of the Board of Tests to approve the Intoxilyzer 8000; 6) a copy of the affirmation of a resolution by the Board of Tests that the pressurized gas cylinders containing a known breath alcohol equivalent ration of nitrogen and gas are approved for using in breath alcohol simulators; 7) Action 08-05 of the Board of Tests approving the mouthpieces to be used in breath-alcohol analysis; 8) Action 09-02 of the Board of Tests stating the operating procedure for breath-alcohol analysis with the Intoxilyzer 8000 and external printer; 9) Certificate of Calibration and Operation for Intoxilyzer 8000, serial number 80-003810, prepared by the Board of Tests; 10) Bench check for Intoxilyzer 8000, serial number 80-003810, using an ILMO cylinder with lot number of 031120801AI. DPS also offered Exhibit 11 Certificate of Calibration from CMI, Exhibit 12 ILMO Specialty Gasses Certificate of Analysis, Exhibit 13 Aid to Court and Exhibit 14 Implied Consent Test Request (part of stipulation). The trial court denied their admission but made them part of the record as offers of proof.


Transcript of Proceedings at 4-6; 15-17.





[7] Transcript of Proceedings at 15; 38-39. see Weathers v. Fulgenzi, 1994 OK 119, ¶ 23, 884 P.2d 538, 543 (finding that an objection to admission of certain evidence must appear in the record for the issue to be preserved for appellate review).





[8] 12 O.S. 2011 § 2801(A)(3).





[9] Fed. R. Evid. 803(8) advisory committee's note (emphasis added); see also Hadley v. Ross, 1944 OK 366, ¶ 18, 154 P.2d 939, 941-42 ("The exception to the hearsay rule in this regard is justified because of convenience and necessity, in view of the fact that it is well recognized that officials perform their duties under oath without prejudice and bias, impelled only by official responsibility and duty. It must also be presumed that their duties are performed efficiently and accurately; their records are therefore considered trustworthy.") (emphasis added).





[10] Although the trial court did not rule on whether the certificates were admissible under the business records exception to the hearsay doctrine, counsel for DPS argued:


The records of a public agency setting forth regularly conducted and recorded activities are excluded from hearsay. The records made in the course of regularly conducted business activity are exempt from the hearsay rule. Those are both under Title 12, Oklahoma Statutes 2803, respectively sections eight and six.


Transcript of Proceedings at 33 (emphasis added).





[11] Fed. R. Evid. 803(6) advisory committee's note.





[12] DPS argued the certificates were reliable because they were certified copies fixed with the state seal. Under § 2803(6), certification that complies with 12 O.S. 2011 §§ 2902(11) & (12) can be used to lay a proper foundation for the admission of documents pursuant to this exception. But certification under 12 O.S. 2011 §§ 2902(11) & (12) does not mention documents fixed with the state seal. Rather subsections (11) and (12) require that "the document is accompanied by a written declaration under oath of the custodian of the record, or other qualified individual that the record was made, at or near the time of the occurrence of the matters set forth by or from information transmitted by a person having knowledge of those matters; was kept in the course of the regularly conducted business activity; and was made pursuant to the regularly conducted activity." 12 O.S. 2011 § 2902(11) & (12) (emphasis added). The certificates in this case were not accompanied by a written declaration under oath from the custodian of the records at either CMI Inc. or ILMO Specialty Gases.





[13] Mark Muratore v. State, ex rel. Dep't of Pub. Safety, Case No. 111,586, at 14 (May 10, 2013) (published).





[14] U.S. Const. amend. VI (emphasis added). The "right to confrontation [is] guaranteed by the Sixth and Fourteenth Amendments and Article 2, section 20 of the Oklahoma Constitution." Taylor v. State, 2011 OK CR 8, ¶ 32, 248 P.3d 362, 373.





[15] Taylor, 2011 OK CR 8, ¶ 32, 248 P.3d at 373 ("[T]he proper focus is whether the challenged statement is 'testimony' against the defendant, triggering the constitutional requirement of an opportunity for cross-examination."); U.S. v. Hendricks, 395 F.3d 173, 179 (3d Cir. 2005) ("The lynchpin of the Crawford decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in Crawford applies only to the former category of statements.").





[16] Matter of W.D., 1985 OK 65, ¶ 13, 709 P.2d 1037, 1042 ("While it may readily be conceded that hearsay rules and the confrontation clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exception as they existed at common law."); Seely v. State, 282 S.W.3d 778, 782 (Ark. 2008) ("In order for hearsay statements to be admissible against a defendant at a criminal trial, two separate requirements must be met. First, an exception to the general rule prohibiting hearsay must be demonstrated. Second, the admission of the hearsay cannot violate the defendant's Sixth Amendment right "to be confronted with the witnesses against him.") (citations omitted); Vigil v. State, 98 P.3d 172, 177 (Wyo. 2004) ("While the Confrontation Clause and hearsay may overlap, they are distinct concepts and objections grounded upon these principles incorporate separate analyses.") (citations omitted).





[17] See also Davis v. Washington, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."); Crawford, 541 U.S. at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law--as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.").





[18] Transcript of Proceedings at 26.





[19] Transcript of Proceedings at 24.





[20] Id. at 31.





[21] Id. at 25.





[22] Id.





[23] Id. at 26.





[24] Id. at 41-42.





[25] Id. at 42-43 (emphasis added).





[26] Transcript of Proceedings, Ex. 6.





[27] In stark contrast to the complete lack of rules for maintenance of the Intoxilyzer 8000, the prescribed maintenance procedures for the Intoxilyzer 5000 require:


(e) Maintenance. Maintenance shall be performed as follows on the above listed equipment at least once during each thirty (30) day period and not later than thirty (30) days since the last prior such maintenance, or after the testing of twenty five (25) subjects, whichever occurs first, by a person possessing a valid Breath Alcohol Analysis (Specialist) permit issued by the Board:


(1) A thorough inspection of the equipment for cleanliness and determination that it is in proper operating condition shall be performed.


(2) The reference ethyl alcohol solution in the alcoholic breath simulator device shall be replaced with new solution and one (1) or more verification analyses performed with the new solution. Each verification analysis shall be performed in accordance with the Operating Procedure(s) prescribed by the State Director of Tests for Alcohol and Drug Influence. The result of each such verification analysis must coincide with the corresponding vapor-alcohol concentration target value within plus or minus one-hundredths gram per two hundred and ten liters (± 0.01g/210 L).


(3) The administrative maintenance performed, shall include; results of said verification analyses, date of inspection, and a record of the inspection will be documented on the log of tests and maintenance record retained by the breath analysis instrument in digital form as prescribed and designated by the State Director of Tests for Alcohol and Drug Influence.


Okla. Admin. Code § 40:30-1-3(e). Although not binding on this Court, in 2007 COCA held that the maintenance log for the Intoxilyzer 5000 that was offered into evidence was admissible under the public records exception to the hearsay doctrine because a state officer performed certain maintenance on the Intoxilyzer 5000 pursuant to his duties as a public official and recorded this fact in a record required to be kept by law. Clark v. State ex rel. Department of Public Safety, 2007 OK CIV APP 12, 153 P.3d 77. However, in the case before us, the machine at issue is an Intoxilyzer 8000, and DPS did not seek to admit a maintenance log for this particular Intoxilyzer 8000.





[28] see Cornett v. Carr, 2013 OK 30, ¶ 14, 302 P.3d 769, 773 (citing Depuy v. Hoeme, 1989 OK 42, ¶ 10, 775 P.2d 1339, 1343-1344) (explaining that a judgment stands as final when the time to appeal has expired, is impervious to reconsideration, and is binding on the parties).









 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Criminal Appeals Cases Cite
Name
Level 1974 OK CR 151, 525 P.2d 1359, WESTERMAN v. STATE
Discussed at Length 2011 OK CR 8, 248 P.3d 362, TAYLOR v. STATE
Discussed at Length
Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2007 OK CIV APP 12, 153 P.3d 77, CLARK v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed 2007 OK CIV APP 56, 164 P.3d 250, DERRICK v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1989 OK 42, 775 P.2d 1339, 60 OBJ 803, Depuy v. Hoeme
Discussed 1994 OK 119, 884 P.2d 538, 65 OBJ 3676, Weathers v. Fulgenzi
Discussed 2001 OK 90, 37 P.3d 841, 72 OBJ 3071, KERR v. CLARY
Discussed 1944 OK 366, 154 P.2d 939, 195 Okl. 89, HADLEY v. ROSS
Discussed 2008 OK 31, 183 P.3d 996, HOLLIS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed 2013 OK 30, 302 P.3d 769, CORNETT v. CARR
Discussed 2013 OK 98, HEDRICK v. COMMISSIONER OF DEPT. OF PUBLIC SAFETY
Cited 1984 OK 16, 680 P.2d 365, Smith v. State ex rel. Dept. of Public Safety
Discussed at Length 1984 OK 21, 681 P.2d 750, Appeal of Dungan
Discussed 1985 OK 65, 709 P.2d 1037, 56 OBJ 1819, W.D., Matter of
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 2801, Definitions
Cited 12 O.S. 2803, Hearsay Exceptions - Availability of Declarant Immaterial
Discussed at Length 12 O.S. 2902, Self-Authentication
Discussed at Length
Title 47. Motor Vehicles Cite
Name
Level 47 O.S. 6-211, Right of Appeal to Court
Discussed 47 O.S. 754, Surrender or Seizure of License - Receipt as Temporary License - Revocation or Denial of Driving Privilege - Hearing
Cited