OSCN Found Document:COUCH v STATE OF OKLAHOMA ex rel. DEPT. OF PUBLIC SAFETY

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 COUCH v STATE OF OKLAHOMA ex rel. DEPT. OF PUBLIC SAFETY
2025 OK 26
Case Number: 121845
Decided: 04/22/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 26, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

CHRISTOPHER COUCH, Plaintiff/Appellant,
v.
STATE OF OKLAHOMA ex rel. DEPT. OF PUBLIC SAFETY, Defendant/Appellee.

OPINION

¶0 Appellant's driver's license revocation was sustained by the district court after he agreed to a breath test, which was later deemed invalid. Couch appealed, and the Court of Civil Appeals, Division III, affirmed the district court's decision. We granted certiorari to resolve a division among the Court of Civil Appeals Divisions III and IV regarding the statutory meaning of the "other competent evidence" issue.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
ORDER OF DISTRICT COURT AFFIRMED

Josh D. Lee, Lee Coats Law, PLC, Vinita, Oklahoma, for Plaintiff/Appellant

Jennifer A. Tupps, Charles M. Thompson, Candice L. Millard, Service Oklahoma, Oklahoma City, Oklahoma, for State of Oklahoma

KUEHN, V.C.J.:

¶1 Appellant, Christopher Couch, was stopped on suspicion of DUI and agreed to a breath test. However, due to errors in the testing process, the result was ruled invalid. Despite the lack of a valid test result, Service Oklahoma revoked Couch's license. This case presents the question of whether a driver's license may be revoked in the absence of a valid test result when the driver has not refused testing. We hold that such revocation is lawful.

I. Background

¶2 Couch was stopped by Oklahoma Highway Patrol Trooper Greninger on June 18, 2022, for failure to display any rear tag lights. Trooper Greninger observed that Couch had watery, bloodshot eyes and detected a strong odor of alcohol on his breath. Trooper Greninger administered three Standardized Field Sobriety Tests to assess Couch's level of impairment. Based on Couch's performance on these tests, Trooper Greninger placed Couch under arrest for suspicion of driving under the influence. 

¶3 After the arrest, Trooper Greninger informed Couch of his implied consent rights. Couch agreed to submit to a breath test and was transported to the Pryor Police Department. Once there, Trooper Greninger administered two breath tests using the Intoxilyzer 8000, both of which registered a blood alcohol content (BAC) of 0.17. Following the test, Couch was issued a Notice of Revocation and/or Disqualification of his driver's license.

¶4 Couch filed a Petition for Review of the revocation, and the district court issued a Stay of Revocation and Order Setting Hearing. At the hearing, Trooper Greninger was the sole witness. Trooper Greninger's testimony was consistent with the facts stated above. However, when questioned about the administration of the breath test, Trooper Greninger could not recall whether he had complied with the rules adopted by the Board of Tests for Alcohol and Drug Influence. 

¶5 Despite the exclusion of the breath test results, the district court sustained the revocation of Couch's driver's license, finding that Trooper Greninger had reasonable grounds to believe Couch was operating a motor vehicle under the influence of alcohol. The Oklahoma Court of Civil Appeals, Division III, affirmed the district court's decision, holding that although Couch had consented to a breath test and the test results were deemed invalid, the revocation of his license remained proper. However, the Oklahoma Court of Civil Appeals, Division IV, addressed the same issue in a separate case and reached the opposite conclusion, finding that when a breath test is excluded, revocation cannot stand. Gray v. State ex rel. Serv. Okla., No. 121,655, slip op. (COCA Div. IV Mar. 28, 2024)(unpublished).

¶6 Couch petitioned for certiorari, arguing that revocation of his driver's license cannot be sustained without valid breath test results. He contends that the conflicting appellate decisions create uncertainty regarding the proper application of the implied consent laws and that his revocation should be reversed in light of Division IV's holding. Couch further asserts that the relevant statutes support Division IV's conclusion, as they require a properly administered and valid test to uphold revocation. We granted certiorari to resolve this conflict and clarify the proper interpretation of the implied consent laws.

II. Standard of Review

¶7 On appeal from orders of implied consent revocations, the appellate courts may not reverse or disturb the findings below unless the lower court's determinations are found to be erroneous as a matter of law or lacking sufficient evidentiary foundation. Cole v. State ex rel. Dep't of Pub. Safety, 2020 OK 67473 P.3d 467Hollis v. State ex rel. Dep't of Pub. Safety, 2008 OK 31183 P.3d 996de novo review. Baliey v. State ex rel. Bd. of Tests for Alcohol & Drug Influence, 2022 OK 50510 P.3d 845de novo review, an appellate court has plenary, independent, and non-deferential authority to determine whether the trial tribunal erred in its legal rulings. Snow v. Town of Calumet, 2022 OK 63512 P.3d 369State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, 2009 OK 61222 P.3d 1058

III. Discussion

¶8 Under Sections 753 and 754 of Title 47 of the Oklahoma Statutes, there are three distinct paths for license revocation: (1) refusal-based revocation; (2) test-based revocation; and (3) sworn report-based revocation. 

¶9 Before 2019, two statutory prerequisites were fundamental to the State's authority to revoke a license: (1) a blood or breath test report or the driver's refusal of such a test; and (2) the officer's sworn report stating that they had reasonable grounds to believe the driver was driving under the influence. Trusty v. State ex rel. Dep't of Pub. Safety, 2016 OK 94381 P.3d 72647 O.S.2011, §§ 753

¶10 In 2019, the Oklahoma Legislature amended Section 753(A), which governs refusal-based revocation, to expand the grounds for revocation. The amendment replaced "and" with "or," allowing revocation to be initiated based on an officer's sworn report of either a driver's refusal to submit to testing or reasonable grounds of impairment--irrespective of whether a chemical test was completed. Compare 47 O.S.Supp.2015, § 753with 47 O.S.Supp.2019, § 753

¶11 Test-based revocation, under Section 754(B), has always required both a valid chemical test result and an officer's sworn report stating reasonable grounds of impairment, and it continues to do so. However, the 2019 amendment to Section 753(A) created a separate basis for revocation, allowing revocation to proceed solely based on an officer's sworn report establishing reasonable grounds to believe the arrested driver was under the influence. As a result, revocation may still be sustained under Section 753(A) even if a chemical test result, which would otherwise support revocation under Section 754(B), is invalidated.

¶12 Beyond the officer's sworn report and chemical test results, courts may also consider additional competent evidence. Section 757 allows either party to introduce additional competent evidence bearing on the question of whether the arrested person was under the influence of alcohol or any other intoxicating substance. 

¶13 Moreover, Section 757 does not override fundamental statutory requirements for revocation. Certain deficiencies--such as the absence of a sworn report or a failure to meet statutory criteria--cannot be cured by introducing additional evidence of intoxication. See Chase v. State ex rel. Dep't of Pub. Safety, 1990 OK 78795 P.2d 1048

1. Refusal-Based Revocation

¶14 Under Section 753(A), a driver's refusal to submit to chemical testing is an independent basis for revocation. 47 O.S.Supp.2023, § 753

¶15 To sustain revocation based on refusal on appeal, the State must prove by a preponderance of the evidence that: (1) the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads while under the influence of alcohol and/or other intoxicating substance; (2) the person was placed under arrest; (3) the person refused to submit to the chemical test; and (4) the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test. 47 O.S.Supp.2023, § 754Hollis, 2008 OK 3147 O.S.Supp.2004, § 753Smith v. State ex rel. Dep't of Pub. Safety, 1984 OK 16680 P.2d 365

2. Test-Based Revocation

¶16 When a driver submits to chemical testing which produces a valid result, Section 754(B) mandates revocation if the test confirms intoxication. However, test-based revocation under Section 754(B) is not automatic; it is initiated only upon receipt of: (1) a written blood or breath test report reflecting that the arrested person, if under twenty-one, had any measurable quantity of alcohol in their blood or breath, or, if twenty-one or older, had a blood or breath alcohol concentration of 0.08 or more; and (2) an officer's sworn report stating that the officer had reasonable grounds to believe the arrested person had been operating or was in actual physical control of a motor vehicle while under the influence of alcohol as prohibited by law. 47 O.S.Supp.2023, § 754

¶17 To sustain revocation based on a chemical test result on appeal, the State must prove by a preponderance of the evidence that: (1) the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads while under the influence of alcohol and/or other intoxicating substance; (2) the person was placed under arrest; (3) if the driver timely requested a breath or blood test, they were not denied the opportunity to submit to testing; (4) the chemical specimen was obtained within two hours of the arrest; (5) the driver was properly advised of the revocation consequences, including that if they were under twenty-one, revocation would occur if the test reflected any measurable quantity of alcohol, or if they were twenty-one or older, revocation would occur if the test reflected an alcohol concentration of 0.08 or more; and (6) the test result, in fact, reflects an alcohol concentration that meets or exceeds the statutory threshold. 47 O.S.Supp.2023, § 754Muratore v. State ex rel. Dep't of Pub. Safety, 2014 OK 3320 P.3d 1024Derrick v. State ex rel. Dep't of Pub. Safety, 2007 OK CIV APP 56164 P.3d 250

3. Sworn Report-Based Revocation

¶18 If a driver submits to chemical testing but the test result is later invalidated due to procedural errors, equipment failure, or improper administration, test-based revocation under Section 754(B) cannot be sustained. However, sworn report-based revocation serves as an alternative statutory basis for revocation under Section 753(A). Sworn report-based revocation is initiated upon receipt of the officer's sworn report stating that the officer had reasonable grounds to believe the arrested driver was under the influence. 47 O.S.Supp.2023, § 753

¶19 In such cases, judicial review follows the framework for sworn report-based revocation rather than test-based revocation, as a valid chemical test result is no longer available. To sustain revocation solely based on a sworn report on appeal, the State must prove by a preponderance of the evidence that: (1) the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads while under the influence of alcohol and/or another intoxicating substance; and (2) the person was placed under arrest. 47 O.S.Supp.2023, § 75447 O.S.Supp.2024, § 6-211Price v. Reed, 1986 OK 43725 P.2d 1254

¶20 Here, the record supports the district court's determination that Trooper Greninger had reasonable grounds to believe Couch was operating a motor vehicle under the influence of alcohol and lawfully placed him under arrest. Trooper Greninger's sworn report and testimony established observable signs of intoxication--bloodshot eyes, the odor of alcohol, and impaired coordination--reinforced by Couch's poor performance on the Standardized Field Sobriety Tests. This evidence satisfies the State's burden on appeal. Therefore, the district court lawfully sustained the revocation of Couch's driver's license.

Conclusion

¶21 Oklahoma law provides three distinct paths for license revocation under Sections 753 and 754 of Title 47. In addition, Section 6-211(H) directs courts to examine the facts, circumstances, and the records on file with Service Oklahoma to determine whether a petitioner is entitled to retain driving privileges. This provision guides the court's evidentiary review once revocation proceedings have been properly initiated under the statutory framework. It ensures that courts engage in a full and fair review of the evidentiary record developed in accordance with Sections 753 and 754. While it does not create an independent basis for revocation or cure the absence of statutory prerequisites, it further confirms that the review of sworn report-based revocation proceeds under the standard set forth in Section 754(C).

¶22 In conducting that evidentiary review, courts are not confined to the officer's sworn report or chemical test results alone. Section 757 permits either party to introduce additional competent evidence bearing on the question of whether the arrested person was under the influence of alcohol or another intoxicating substance. This provision complements the directive in Section 6-211(H) by authorizing courts to consider a broader evidentiary record.

¶23 Here, the court considered both the officer's sworn report and additional competent evidence under Section 757, including Trooper Greninger's observations and Couch's performance on the Standardized Field Sobriety Tests. Taken together, this evidence satisfied the requirements for both initiating and sustaining sworn report-based revocation under Sections 753(A) and 754(C).

¶24 The 2019 amendment to Section 753(A), which expanded the scope of individuals subject to license suspension for drunk driving, reflects a substantive policy decision by the Legislature. Legislative amendments are presumed to change the law unless they merely clarify existing language. CompSource Mut. Ins. Co. v. State ex rel. Okla. Tax Comm'n, 2018 OK 54435 P.3d 90

¶25 It is not the role of this Court to decide whether this approach is far-reaching; that determination rests with policymakers in the Legislature. Fent v. Okla. Capitol Improvement Auth., 1999 OK 64984 P.2d 200

¶26 Although Trooper Greninger initially stopped Couch for a tag light violation, his primary duty was to ensure public safety. Upon making contact, he observed clear signs of intoxication--bloodshot eyes, the strong odor of alcohol, and poor coordination--leading him to administer Standardized Field Sobriety Tests and place Couch under arrest. Oklahoma's implied consent laws are intended to protect the public by ensuring that impaired drivers are identified and removed from the roads. Robertson v. State ex rel. Lester, 1972 OK 126501 P.2d 1099

 

Kuehn, V.C.J., and Winchester, Edmondson, Combs, Darby (by separate writing) and Kane, JJ., concur.

Rowe, C.J. (by separate writing), and Gurich, J., dissent.

FOOTNOTES

47 O.S.Supp.2023, § 761

Trusty v. State ex rel. Dep't of Pub. Safety, 2016 OK 94381 P.3d 726Bryant v. Comm'r of the Dep't of Pub. Safety, 1996 OK 134937 P.2d 49647 O.S. § 753

47 O.S.2021, § 757

The provisions of Sections 751 through 761 of this title do not limit the introduction of any other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance.

See Baldwin v. State ex rel. Dep't of Pub. Safety, 1993 OK 31849 P.2d 400

47 O.S.Supp.2023, § 753

The Director of Service Oklahoma, upon the receipt of a sworn report of the law enforcement officer . . . that the person had refused to submit to the test or tests, shall revoke the license to drive and any nonresident operating privilege for a period provided by Section 6-205.1 of this title.

47 O.S.Supp.2023, § 753

The Director of Service Oklahoma, upon the receipt of a sworn report of the law enforcement officer that the officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance . . . shall revoke the license to drive and any nonresident operating privilege for a period provided by Section 6-205.1 of this title.

See Toch, LLC v. City of Tulsa, 2020 OK 81474 P.3d 859see also Pulsifer v. United States, 601 U.S. 124, 133 (2024) (recognizing "and" as conjunctive).

 

 

Darby, J., concurring specially,

¶1 I agree with the majority that the Director of Service Oklahoma properly revoked Couch's license to drive based upon the officer's report that he had reasonable grounds to believe the arrested person was driving under the influence. Title 47, section 753(A) of the Oklahoma Statutes, as amended in 2019, changed the "and" to "or" as discussed in the majority opinion. The 2019 version of section 753(A) also states that if the Commissioner of Public Safetydenies the issuance of a license or permit the review is to be conducted as provided in section 754. A common-sense reading tells us that review of a license revocation under 753 is also subject to review as provided in section 754. This conclusion is supported by the language in section 754 which discusses review of revocations at the appeal hearing. See 47 O.S.2021, § 754

¶2 Section 754(C)(1) applies if the revocation is based upon a test result and 754(C)(2) applies if the revocation is based upon a refusal to submit to a test. 47 O.S.2021, § 754

¶3 Section 754 mandates that the appeal hearing shall be conducted in accordance with section 6-211 of title 47. See 47 O.S.2021, § 754

¶4 Section 6-211(H) provides:

The court shall take testimony and examine the facts and circumstances, including all of the records on file in the office of the Department of Public Safety relative to the offense committed and the driving record of the person, and determine from the facts, circumstances, and records whether or not the petitioner is entitled to driving privileges or shall be subject to the order of denial, cancellation, suspension or revocation issued by the Department. In case the court finds that the order was not justified, the court may sustain the appeal, vacate the order of the Department and direct that driving privileges be restored to the petitioner, if otherwise eligible.

47 O.S.2022 § 6-211

¶5 This broad language no doubt permits evidence of field sobriety test results as testified to by the arresting officer. Section 6-211(D) also makes clear that a person whose driving privilege is subject to revocation pursuant to sections 753 or 754 may appeal to the district court.

¶6 To summarize, section 753 requires only a sworn report. Section 6-211 permits the evidence presented at Couch's review hearing. Sections 754(C)(1) and (2) both begin with the word "if" and neither (1) or (2) apply to Couch's case because the court admitted no test and Couch did not refuse the test. Section 754(C) must still govern the appeal when the test is ruled inadmissible. These sections, interpreted together to make sense and to protect due process, are proper authority to affirm the district court.

¶7 I respectfully concur specially.

FOOTNOTES

 

 

ROWE, C.J., with whom GURICH, J., joins, DISSENTING: 

¶1 Today's opinion highlights the need for a legislative remedy, not a judicial one. Only through legislative action can Oklahoma's Implied Consent Statutes be properly clarified, and their intended purpose explicitly followed. Years of less than articulate legislative amendments--coupled with inconsistent judicial interpretations--have produced a patchwork of jurisprudence that fails to reflect the intent of the Legislature.

¶2 "The quintessence of [Oklahoma's Implied Consent Statutes] is that by driving a motor vehicle on the public highway, the operator consents to the taking of a chemical test to determine the alcoholic content of his blood." Trusty v. State ex rel. Dep't of Pub. Safety, 2016 OK 94381 P.3d 726Robertson v. State ex rel. Lester, 1972 OK 126501 P.2d 1099

¶3 Service Oklahoma revoked Couch's driver's license after receiving a written breath test report reflecting Couch's alcohol concentration level was more than 0.08 and the Highway Patrol Trooper's affidavit which stated he had reasonable grounds to believe Couch was driving under the influence. 47 O.S. § 75447 O.S. § 75747 O.S. § 757

¶4 I disagree with the Majority's holding that § 753 is applicable to this cause--or that it can serve to negate the state's duty to offer a chemical test. 47 O.S. § 753

¶5 Here, Couch submitted to a breath test and a sworn report was submitted--as such, 47 O.S. § 754de novo trial before the district court. See 47 O.S. § 75447 O.S. § 754

¶6 Service Oklahoma failed to satisfy § 754(C)(1)(e) due to the breath test's inadmissibility. Nonetheless, Service Oklahoma argued the inadmissibility of the breath test was not fatal to the case because § 757 operates as a savings statute. To determine the interplay of § 757 with § 754(C), we must look to the text.

¶7 "The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by statutory language." Odom v. Penske Truck Leasing Co., 2018 OK 23415 P.3d 521Oklahoma Pub. Emps. Ass'n v. State ex rel. Oklahoma Off. of Pers. Mgmt., 2011 OK 68267 P.3d 838

¶8 Sections 754(B) and (C) and § 757 are blatantly unambiguous. To revoke a driver's license, § 754(B) unequivocally requires (1) a blood or breath test, or a refusal thereof, and (2) a sworn report detailing the arresting officer had reasonable grounds to believe the driver was operating a motor vehicle while under the influence. On appeal to the district court, § 754(C) Keating v. Edmondson, 2001 OK 11037 P.3d 882

¶9 In addition to the mandatory requirements of § 754(B) and (C), § 757 contemplates the introduction of other competent evidence bearing on the question of whether a person was under the influence as it pertains to sections 751 through 761. However, nothing in § 757 suggests that other competent evidence will obviate the requirements to revoke a driver's license set forth in § 754(B) or the requirements mandated to be satisfied on appeal in § 754(C).

¶10 Service Oklahoma's reading of § 757 renders the requirements of § 754(B) and (C) effectively meaningless. Had the Legislature stated the mandatory requirements of §754(B) and (C) may be overcome by the introduction of any other competent evidence bearing on the question of whether the driver was under the influence, § 757 would operate as a savings statute. Yet, the language of § 757 says nothing to that effect. Undeniably, Oklahoma's Implied Consent statutes are based on a driver's breath or blood test for the purpose of determining alcohol concentration or the presence of other intoxicating substances. The outcome of a revocation proceeding is predicated on a breath or blood test or refusal thereof.

¶11 When read in harmony with § 754(B) and (C), § 757 must yield to the mandatory language set forth in § 754(B) and (C). Section 757 alone cannot sustain a revocation in lieu of § 754(B) and (C)'s requirements. "A statute must be read to render every part operative and to avoid rendering parts superfluous or useless." Rickard v. Coulimore, 2022 OK 9505 P.3d 920Id. In light of the mandatory requirements of § 754(B) and (C), I would find the Legislature intended for § 757 to serve as a vehicle for the admission of additional evidence, not evidence in lieu of the clear statutory requirements needed to sustain a license revocation.

¶12 This interpretation does not render § 757 meaningless. Section 757 remains operative, as it allows Service Oklahoma to introduce additional evidence to meet its burden. For example, Service Oklahoma may introduce evidence of failed field sobriety tests pursuant to § 757 to support a finding that the officer had reasonable grounds to believe the driver was driving under the influence as required by 47 O.S. § 754inter alia, Service Oklahoma may introduce expert testimony under § 757 to support a toxicology report in regard to a blood test. With blood test results, other competent evidence is often necessary in the form of expert testimony, particularly in regard to whether the report reflects a substance that is intoxicating.

¶13 Undeniably, the outcome of a revocation proceeding is predicated on the test report, or refusal thereof. As such, without admission of a test result, or evidence of a refusal, other competent evidence under § 757 cannot alone sustain a revocation. Accordingly, I would find the district court erred when it sustained Couch's revocation in the absence of his breath test results.

¶14 I respectfully dissent.

FOOTNOTES

47 O.S. § 75447 O.S. § 754

47 O.S. § 75747 O.S. § 757

47 O.S. § 754

C. The appeal hearing before the district court shall be conducted in accordance with Section 6-211 of this title. The hearing shall cover the issues of whether the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance or the combined influence of alcohol and any other intoxicating substance as prohibited by law, and whether the person was placed under arrest.

1. If the revocation or denial is based upon a breath or blood test result and a sworn report from a law enforcement officer, the scope of the hearing shall also cover the issues as to whether:

a. if timely requested by the person, the person was not denied a breath or blood test,

b. the specimen was obtained from the person within two (2) hours of the arrest of the person,

c. the person, if under twenty-one (21) years of age, was advised that driving privileges would be revoked or denied if the test result reflected the presence of any measurable quantity of alcohol,

d. the person, if twenty-one (21) years of age or older, was advised that driving privileges would be revoked or denied if the test result reflected an alcohol concentration of eight-hundredths (0.08) or more, and

e. the test result in fact reflects the alcohol concentration.

2. If the revocation or denial is based upon the refusal of the person to submit to a breath or blood test, reflected in a sworn report by a law enforcement officer, the scope of the hearing shall also include whether:

a. the person refused to submit to the test or tests, and

b. the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test or tests.

D. After the hearing, the district court shall order the revocation or denial either rescinded or sustained.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105